STATE EX REL. PYATSKOWIT, Petitioner, v. MONTOUR, Sheriff of Shawano County, Wisconsin, Respondent.

*No. 75–695.—Decided April 7, 1976.*
(Also reported in 240 N. W. 2d 186.)

For the petitioner: *Warren A. Kenney* and *John M. Murtagh*, Wisconsin Indian Legal Services.

For the respondent: *John D. Niemisto*, assistant attorney general.

ROBERT W. HANSEN, J. The sole and entirely legal question to be answered is whether, as to the crimes here charged, the state courts have jurisdiction to try a member of the Menominee tribe for offenses committed on the Menominee Indian Reservation.

Prior to 1953, the state of Wisconsin was without jurisdiction over Indian tribal members who committed criminal offenses on Indian tribal lands. This included members of the Menominee Indian tribe as to crimes committed on the then Menominee Indian Reservation.

In August of 1953, the Congress of the United States enacted Public Law 280 which granted to the state of Wisconsin criminal jurisdiction as to crimes committed by or against Indians in Indian country. However, specifically exempted was the Menominee Indian Reservation. (Act of August 15, 1953, ch. 505, 67 Stats. 588.)

In June of 1954, Congress enacted the Menominee Termination Act. (Act of June 17, 1954, ch. 303, 68 Stat. 250.) Section 10 of such Act provided that when title to the property of the tribe has been transferred to the tribe ". . . all statutes of the United States which

affect Indians because of their status as Indians shall no longer be applicable to the members of the tribe, and the laws of the several states shall apply to the tribe and its members in the same manner as they apply to other citizens or persons within their jurisdictions."

In August of 1954, Public Law 280 was amended by Congress to place members of the Menominee Indian tribe within the provisions of Public Law 280, removing the earlier exemption of such tribe. (Act of August 24, 1954, ch. 910, 68 Stat. 795.) On April 26, 1961, the secretary of the United States Department of the Interior issued the proclamation which "triggered" the "all statutes" or made effective the "all statutes" removal of exemption as to members of the Menominee tribe. (26 Fed. Reg. 3726 (1961).)

In December of 1973, Congress enacted the Menominee Restoration Act. (25 U. S. Code, sec. 903 et seq.) This law repealed the Termination Act as to tribal lands of the Menominee Indians. Sec. 903d (d) provides: "The Secretary and the Menominee Restoration Committee shall consult with appropriate state and local government officials to assure that the provision of necessary governmental services is not impaired as a result of the transfer of assets provided for in this section."

It is the position of the petitioner that under sec. 903d (d) the state lost jurisdiction as to crimes committed by Menominee Indians on the land of the Menominee tribe on the date of transfer of lands to trust status (April 22, 1975). This, it is claimed, is the "act of highest significance in restoration" and such date of transfer ends the transitional period provided for in sec. 903d (d).

It is further the position of the petitioner that, while Public Law 280 is still on the books (*See:* 18 U. S. Code, sec. 1162) and on its face applicable to Menominee tribal members and lands, such act was sub silentio re-

pealed by the enactment of the Menominee Restoration Act, at least after the transitional period provided for in sec. 903d (d) had come to an end. It is contended that all privileges and rights enjoyed by the Menominees prior to June 17, 1954, were reinstated by sec. 903a (a), (b) and (c), and it is pointed out that Public Law 280 was not amended to include the Menominees until after the passage of the Termination Act.

It is the position of the attorney general of the state of Wisconsin that sec. 903d (d) and (e) give the state courts full jurisdiction over this case. The rationale of this position is that state jurisdiction for criminal law purposes should be held to continue until an alternative court system has been established by federal law. Cited as supporting this result is H. R. Rep. No. 572, 93d Congress, 1st Sess. 6 (1973) which states: "Subsections 6 (d) and (e) provide for the orderly transfer of governmental functions and continuation of necessary governmental services during such transfer." (Referring to sec. 903d (d) and (e).)

It is also the position of the United States Bureau of Indian Affairs that the state courts continue to have criminal jurisdiction as to the Menominee Indian Reservation under the Restoration Act. While taking the position that Public Law 280 was repealed by implication by passage of the Restoration Act, the position of the bureau is stated as follows: "A clear intent of the Restoration Act is that the governments involved—state, tribal and federal—provide for an orderly transition of authority [citing 25 U. S. Code 903d (d)]. Accordingly . . . the federal and tribal governments will commence the exercise of jurisdiction on January 1, 1976. . . ." The date referred to was the original proposed date, subsequently postponed, for the retrocession of jurisdiction over the Menominee Indian Reservation by the state.

Retrocession did take place on March 1, 1976, by proclamation of the governor of Wisconsin.

Thus the Wisconsin attorney general and Bureau of Indian Affairs would see state court jurisdiction as to the instant case granted by the transitional provisions of the Menominee Restoration Act, particularly its sec. 903d (d) and (e).

It is additionally the position of the attorney general that the jurisdiction of the state courts continues under the provisions of Public Law 280. The amendment of Public Law 280 to make Menominee Indian tribal members subject to state jurisdiction is seen as a separate and independent federal law not affected or repealed by the passage of the Restoration Act. It is pointed out that courts are slow to enlarge the meaning of one act in order to hold that it repeals another by implication. (*See:* 82 C. J. S., *Statutes,* p. 485, sec. 288.) The contention is that Public Law 280 and the Termination Act are to be considered as separate and severable laws existing independently each of the other.

It is this position that is also taken by the United States Department of Justice. The department's position is that the state courts in Wisconsin will continue to have criminal jurisdiction over Menominee Indians on their restored lands under Public Law 280. The two ways in which the state courts could lose such federally granted jurisdiction would be: (1) An amendment to the Menominee Restoration Act giving the federal courts criminal jurisdiction over Menominee Indians; or (2) the state's retroceding its jurisdiction to the federal government as provided for by 25 U. S. Code, sec. 1323. Thus either federal or state action is seen as required to avoid the creation of a possible "no man's land" in which neither state nor federal courts would have jurisdiction as to crimes committed by Menominee Indians on the Menominee Indian Reservation.

We reject the challenge to the jurisdiction of the state courts as raised by petitioner. We hold that, as to the time and place of the crimes here involved, the state of Wisconsin has jurisdiction to try the petitioner under the provisions for a transitional period in the Menominee Restoration Act. (25 U. S. Code, sec. 903–903f.) We additionally hold that, as applied to this case, Public Law 280 has not been repealed and grants full criminal jurisdiction to the courts of this state. (18 U. S. Code, sec. 1162.) Thus, assuming *arguendo* that the alleged crimes here involved occurred on Menominee Indian lands and that the petitioner is a Menominee tribal member, we nevertheless conclude that the state of Wisconsin has jurisdiction of the criminal charges brought against petitioner in the courts of this state.

*By the Court.*—Petition for writ of habeas corpus is denied.